IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DAVID LEE UNDERWOOD, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:18-cv-00942-P-BP |
| § | |
| ANDREW M. SAUL,[1] § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff David Lee Underwood ("Underwood") filed this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Mark T. Pittman **AFFIRM** the Commissioner's decision.

I. STATEMENT OF THE CASE

Underwood filed for DIB and SSI on September 29, 2015, alleging that his disability began on September 15, 2014. Social Security Admin. R. (hereinafter "Tr."), ECF No. 11-1 at 15. The Commissioner initially denied Underwood's claims on January 6, 2016 and denied them again on reconsideration on May 11, 2016. *Id.* Underwood requested a hearing, which was held in Dallas,

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

Texas on May 17, 2017 with a supplemental hearing on October 2, 2017. *Id.* Underwood also amended his alleged onset date from September 15, 2014 to April 17, 2015. *Id.* The ALJ issued a partially favorable decision on December 7, 2017. *Id.* at 27. The ALJ found that based on the application for DIB, Underwood was not disabled through December 31, 2015, and based on the application for SSI, Underwood was disabled beginning on March 8, 2017. *Id.*

The ALJ employed the statutory five-step analysis and established during step one that Underwood had not engaged in substantial gainful activity since April 17, 2015, the amended alleged disability onset date. *Id.* at 18. At step two, the ALJ determined that since April 17, 2015, Underwood had the severe impairments of ulcerative colitis, irritable bowel syndrome, cirrhosis of the liver, lumbar degenerative disc disease, and alcohol abuse. *Id.* At step three, the ALJ found that Underwood's impairments since the amended alleged onset date did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 19. In particular, the ALJ concluded that Underwood retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except he could lift and carry only 20 pounds occasionally and 10 pounds frequently. *Id.* at 20, 23. At step four, the ALJ found that from April 17, 2015 through March 7, 2017, Underwood was able to perform his past relevant work as a guitar salesperson and repairman. *Id.* at 24. The ALJ found that since March 8, 2017, Underwood was unable to perform any of his past relevant work and was therefore disabled. *Id.* at 24–25.

The Appeals Council denied review on October 9, 2018. *Id.* at 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II. FACTUAL BACKGROUND

According to Underwood's pleadings, testimony at the administrative hearing, and the administrative record, Underwood was born on October 2, 1965 and completed a high school education. Tr. 25, 125. Before the established disability onset date, Underwood was a younger individual (between the ages of 40 and 49), and since the onset date, he has become an individual closely approaching advanced age (between the ages of 50 and 54). *Id.* at 25. He asserts that his physical and mental impairments render him disabled under the SSA. *Id.* at 114–15. The ALJ found that Underwood failed to establish disability through Dec. 31, 2015, a requirement for being entitled to DIB. *Id.* at 27.

## III. STANDARD OF REVIEW

Title II, 42 U.S.C. §§ 404 *et seq.* of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Part 404 (2019). The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1) (2019).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520 (2019). First, the claimant cannot qualify for disability benefits if he is engaged in any substantial gainful activity. 20 C.F.R. § 404.1520(b) (2019). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b) (2019)). Second, to qualify for benefits, the claimant must have an impairment or combination of impairments that is severe. 20

C.F.R. § 404.1520(c) (2019). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d) (2019). Fourth, if the claimant's medical status alone does not constitute a disability, he can qualify for disability benefits if his impairment or impairments prevent him from returning to his past relevant work. 20 C.F.R. § 404.1520(f) (2019). Fifth, the impairment must prevent the claimant from doing any other work, even after considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g) (2019). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess the claimant's RFC: "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2019).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d

at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal citation omitted).

### IV. ANALYSIS

Underwood raises two issues on appeal. He claims that the ALJ (1) improperly found that his disability began on March 8, 2017, and (2) failed to properly consider the treating physician's opinion. ECF No. 14 at 2–3.

**A. The ALJ did not err in finding that Underwood's disability began on March 8, 2017.**

An ALJ may reject a claimant's alleged onset date of disability "only if reasons are articulated and the reasons given are supported by substantial evidence." *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations omitted). The ALJ does not need to specifically cite each piece of medical evidence that he considered. *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005). Inconsistencies in the claimant's subjective complaints and the objective medical evidence can support an ALJ's decision to reject or give little weight to the claimant's testimony. *See Rollins v. Astrue*, 464 F. App'x 353, 358 (5th Cir. 2012); *Martin v. Colvin*, No. 3:12-cv-5237-B, 2014 WL 4414768, at *5 (N.D. Tex. Sept. 5, 2014).

Here, the ALJ articulated his reasons for rejecting Underwood's alleged onset date, and his decision is supported by credible medical findings. The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. 20. For example, Underwood stated in his function report that he had memory problems and had difficulty following lengthy instructions. *Id.* at 21, 354. However, the ALJ noted that he repaired guitars and made beef

5

jerky, which "require[d] significant focus, skill, and following instructions," and a mental status examination showed no deficits in memory or cognitive functioning. *Id.* at 21, 480.

The ALJ found that before March 2017, "the severity and frequency of [Underwood's] bowel movements [were] not as severe as alleged during the hearing." *Id.* at 21. During Underwood's hearings, he stated that he had a bowel movement every fifteen to thirty minutes. *Id.* at 59. "[P]rior to March 2017, [Underwood] reported to treating medical providers he was *not* using the restroom every 15 to 30 minutes." *Id.* at 23 (emphasis in original); *see, e.g.*, *id.* at 977 (December 1, 2016 statement from Underwood that he had ten bowel movements per day). Throughout 2016, Underwood reported around twenty bowel movements per day, which does not average out to using the restroom every fifteen to thirty minutes. *See id.* at 719, 727, 732–33, 737, 744, 771, 964, 971, 975, 977.

Underwood is correct that a significant amount of evidence of frequent bowel movements supports his alleged disability onset date. He reported in December 2015 that he had thirty-five to forty daily bowel movements "for the last year;" in March 2016, bowel movements every five to ten minutes; in August 2016, twenty to forty daily bowel movements; and in November 2016, twenty to forty daily bowel movements, also reported as one every ten to fifteen minutes. *Id.* at 719, 771, 929, 971. However, the Court is not empowered to reweigh the evidence presented to the ALJ. Substantial evidence in the record supports the ALJ's determination of an onset date of March 8, 2017, and the Court cannot find that "no credible evidentiary choices or medical findings support the decision." *See Boyd*, 239 F.3d at 704. Therefore, the Court concludes that substantial evidence supports the ALJ's decision that Underwood's disability began on March 8, 2017.

**B. The ALJ properly considered the opinion of Dr. Troutman, the treating physician.**

The Social Security Administration states that it "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's medical

opinion." 20 C.F.R. § 404.1527(c)(2) (2019). An ALJ should give a treating physician's opinion "great weight" in determining disability, but if good cause is shown, the ALJ may give the opinion little or no weight. *Rollins*, 464 F. App'x at 355. Before an ALJ determines that a treating physician's opinion is not entitled to "controlling weight," he must consider six factors:

> (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating physician.

*Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). Even if the ALJ does not explicitly address each factor, however, any error would be harmless so long as the record contains all of the information required for the factors that the ALJ did not address. *See Rollins*, 464 F. App'x at 358. "The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it. . . ." *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). "[The] court will not vacate a judgment unless the substantial rights of a party have been affected." *Rollins*, 464 F. App'x at 358 (internal quotation marks omitted).

Here, Underwood argues that the ALJ failed to apply the *Newton* factors or refer to competing medical evidence that "would excuse the ALJ from conducting the detailed analysis that Section 404.1527(c) requires." ECF No. 14 at 11. However, the ALJ's opinion addressed the fourth and fifth factors, and the record evidence contains all the information required for the other factors. *See* Tr. 20–21, 1026. Dr. Troutman's Medical Source Statement states the length of time that he has treated Underwood (since December 8, 2015), his specialization (gastroenterology), and some details about the nature and extent of the treatment relationship and frequency with which he examined Underwood. *Id.* at 1026. The medical progress notes further detail the frequency of examination. *See, e.g., id.* at 732–34, 737–42, 744–49, 1081–86. Underwood has not

shown that any of his substantial rights have been affected, so the Court concludes that the ALJ properly considered Dr. Troutman's opinion.

## V. CONCLUSION

Because the ALJ employed the correct legal standards, substantial evidence in the record supports his decision, and the Plaintiff has failed to show that reversal of the ALJ's decision is required, the undersigned **RECOMMENDS** that United States District Judge Mark T. Pittman **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2019) and Fed. R. Civ. P. 72(b)(1) (2019). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on **December 9, 2019**.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE